IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAPHNE SINGINGTREE,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,

        Defendant.

Civil No. 06-1253-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Daphne Singingtree ("Singingtree") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

**BACKGROUND**

Born in 1958, Singingtree reports a sixth grade education with a General Equivalency Degree. Tr. 48, 314.[1] Between 1978 and 2000, Singingtree worked as a midwife, social services community liaison officer, and executive director of a midwifery school. Tr. 91.

Singingtree filed the present applications for DIB and SSI in November 2002. Tr. 48-50, 282-283. She alleges disability since January 10, 2001, due to bipolar disorder, diabetes, asthma, plantar fasciitis, morbid obesity, hypothyroidism, sleep apnea, and back and neck injuries. Tr. 100-01. Singingtree's applications were denied initially and upon reconsideration. Tr. 33-37, 40-42, 286-90, 292-94. After Singingtree's May 2005 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Singingtree not disabled. Tr. 14-19. The Appeals Council accepted additional evidence into the record, but denied review of the ALJ's decision. Tr. 7-10. This action made the ALJ's decision the Commissioner's final decision. Singingtree presently appeals.

**DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Singingtree challenges the ALJ's evaluation of the evidence and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer January 18, 2007 (Docket #8).

2 - FINDINGS AND RECOMMENDATION

two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds the claimant can do her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that

"the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920.

## THE ALJ'S FINDINGS

At step one in the sequential proceedings, the ALJ found that Singingtree did not engage in substantial gainful activity during the relevant period.  Tr. 18.  The ALJ found Singingtree's "morbid obesity and diabetes mellitus type II" severe at step two, but found that they did not meet or equal a listed impairment at step three.  Tr. 19.  The ALJ subsequently found Singingtree "not entirely credible" and evaluated Singingtree's RFC as follows:

> The claimant retains the residual functional capacity to perform light work.  She can sit and stand/walk at sedentary levels.  She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  She cannot climb ropes, ladders, and scaffolds.

*Id.*  The ALJ found at step four that Singingtree could perform her past relevant work as a community relations and services advisor and as a community center director.  *Id.*  The ALJ therefore found Singingtree not disabled.  *Id.*  Because the ALJ found Singingtree not disabled at step four, he was not required to address the fifth step in the sequential analysis.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This court reviews evidence that both supports and detracts from the ALJ's

conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Singingtree contends the Commissioner failed to properly evaluate opinions rendered by a treating physician and an evaluating psychologist, as well as Singingtree's testimony and that of a lay witness. Singingtree makes no other arguments and does not challenge the ALJ's obesity analysis.[2]

### I. Medical Source Statements

Singingtree argues that the ALJ failed to credit the opinions of examining psychologist Dr. McConochie and treating physician Dr. Fisher. Pl. Opening Br. 19-20.

#### A. Legal Standard

An ALJ may reject physician opinions inadequately supported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2004)). Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of a treating physician. *Id.*

---

[2]This court notes that Singingtree's suggestion that benefit eligibility would allow her to obtain gastric bypass surgery is not based upon the record. No medical treatment provider suggested Singingtree is a suitable candidate for such surgery.

B.  **Discussion**

a.  **Examining Psychologist Dr. McConochie**

Singingtree contends that Dr. McConochie's report "does not support the ALJ's conclusion" that her psychological impairment is "not severe" at step two in the sequential proceedings.  Pl. Opening Br. 19.  She also contends that the ALJ ignored Dr. McConochie's "conclusion that Plaintiff lacks the mental capacity to manage money and deal with math." Pl. Opening Br. 19-20.

The ALJ discussed Dr. McConochie's opinion, noting Singingtree's reports to Dr. McConochie and Dr. McConochie's assessment of a "history of bipolar symptoms currently absent, and an eating disorder [not otherwise specified] due to compulsive eating." Tr. 16.  The ALJ noted Dr. McConochie's opinion that Singingtree "did not have any major psychological limitations" and concluded that Dr. McConochie's report "is not consistent with significant psychological problems." Tr. 16.

On February 12, 2003, Dr. McConochie conducted a clinical evaluation and assessed Singingtree with a "History of periodic difficulties with bipolar symptoms but currently having no such symptoms. [Rule out] . . . eating disorder [no onset specified]." Tr. 207.
Dr. McConochie noted, "She does not appear able to manage money responsibly, by her own report." Tr. 207.[3]

An impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Dr. McConochie's report does not

---

[3] Dr. McConochie subsequently indicated that Singingtree would be unable to manage any funds granted her. Tr. 208.

indicate that Singingtree's bipolar disorder causes such limitations. Dr. McConochie's report furthermore did not find mental limitations precluding Singingtree's ability to manage money. Tr. 207. Instead, Dr. McConochie noted that Singingtree "does not appear to be able to manage money responsibly, by her own report." *Id.* Because the ALJ appropriately rejected Singingtree's credibility, discussed below, he was not required to rely upon medical opinions predicated upon her reports. *Tonapetayn v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ's omission of Dr. McConochie's statement that Singingtree may not be able to manage funds was based upon the correct legal standards.

For these reasons, the ALJ's analysis of Dr. McConochie's report is consistent with the record and should be affirmed.

      **b.**      **Treating Physician Dr. Fisher**

Singingtree contends that "The ALJ erred by ignoring Dr. Fisher's report. That report establishes that Plaintiff's bipolar report is stress exacerbated." Pl. Opening Br. 20. The ALJ cited Dr. Fisher's report:

> More recent reports by Erik Fisher, M.D., a psychiatrist at Lane County Mental Health, in January and March 2005 suggest that the claimant indeed has a bipolar condition, exacerbated by stress, but her mental functioning was actually pretty good (Exhibit 12F).

Tr. 16.

The ALJ considered Dr. Fisher's opinion. The ALJ's analysis is furthermore consistent with Dr. Fisher's January and March 2005 clinical reports, which show assessments of "Bipolar Disorder, Type I, quite stress exacerbated, but she has not had stresses sufficient to require use of the Seroquel and put it to the test yet," and, "I continue to think that she has a Bipolar Disorder,

7 - FINDINGS AND RECOMMENDATION

Type I, stress exacerbated, and that we may have found the Seroquel to become suitable intermittent intervention, but it is not something that has been truly enough . . . put to the test yet." Tr. 280-81.

This court finds the ALJ's summary of Dr. Fisher's notes was appropriate and based upon the record. Singingtree's contention that the ALJ "ignored" Dr. Fisher's report that her bipolar disorder may be exacerbated by stress is not supported by the record. The ALJ's analysis of Dr. Fisher's notes should be affirmed.

### C. Conclusion: Medical Source Statements

In summary, Singingtree fails to show that the ALJ erred in assessing the clinical reports submitted by Drs. McConochie and Fisher. The record shows no indication of "longitudinal" bipolar disorder inconsistent with the ALJ's analysis. Tr. 207, 213, 216, 218, 226, 252, 254, 280-81. The ALJ's findings are based upon the record and should be affirmed.

## II. Credibility

Singingtree's credibility challenge asserts that the ALJ failed to provide "clear and convincing" reasons for rejecting her testimony. Pl. Opening Br. 17. The ALJ found Singingtree "statements concerning her impairments not entirely credible," citing her medical record and her daily activities. Tr. 16-17, 19.

### A. Credibility Analysis

The ALJ's credibility findings must "state which symptom testimony he found not credible with enough specificity to allow a reviewing court to confirm that the testimony was rejected on permissible grounds and not arbitrarily." *Benton v. Barnhart*, 331 F.3d 1030, 1041 (9th Cir. 2003), *see* also *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making

credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, including any failure to seek treatment, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

**B.    Discussion**

Singingtree asserts that the ALJ should have identified "specific evidence" showing "specific testimony" was not credible. Pl. Opening Br. 17.

*ii.    Naps*

Singingtree first contends that the ALJ failed to adequately reject her testimony that she must nap each day five days per week, submitting that "none of the activities mentioned by the ALJ are incompatible with [Singingtree's] described fatigue and need for daytime naps." Pl. Opening Br. 18.

The ALJ's credibility discussion noted Singingtree's daily activities:

> The claimant testified that she was currently attending web design classes, financed by a combination of student loans and grants; these were on-line classes. She spent part of the day on the computer, up to 5-6 hours on "good days." She had self-published a book on midwifery, and was in the process of writing another book. She also did a little gardening and played cards. These reports suggest that the claimant can engage in a fairly broad range of sedentary activities.

*Id.* The ALJ may cite daily activities in finding that a claimant's activities are inconsistent with allegations of disability. *Burc*h, 400 F.3d at 681, *Smolen*, 80 F.3d at 1284. These activities must

only show that "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, __ F.3d ___ (9th Cir. 2007) (*available at* 2007 WL 2034287 at *13) (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Singingtree's described activities are not limited to the extent requiring reversal. *See id.*

Singingtree suggests that her need for naps is "not incompatible" with her described activities. The Ninth Circuit notes, "Although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational, and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680-81 (*citing Magallanes*, 881 F.2d at 750). This court believes that Singingtree's napping could be either compatible or incompatible with both her activities of daily living and employment. Therefore this court affirms the ALJ's finding that Singingtree's activities of daily living contradict the limitations described in her testimony, including her need for naps. *Id.*

Finally, the record does not show that Singingtree requires daily naps: Singingtree's initial reports did not make this claim and no medical provider endorsed her need for naps. Tr. 62-71. In this regard, the ALJ's omission of Singingtree's daily naps is consistent with the record.

### ii.     *Elevated Legs*

Singingtree contends that the ALJ failed to account for her testimony that she must elevate her legs. Pl. Opening Br. 19. Singingtree's submission does not indicate how often she must elevate her legs. *Id.* The ALJ cited Singingtree's testimony that she treated her cellulitis

10 - FINDINGS AND RECOMMENDATION

by elevating her legs, noting that "these episodes did not last for the 12-month duration requirement and they are not severe impairments." Tr. 17. Singingtree's contention that the ALJ "did not address" her testimony regarding her legs is not based upon the record. Pl. Opening Br. 19.

The record shows that Singingtree experienced one episode of cellulitis in her legs in January 2002. Tr. 249. At this time physicians suggested Singingtree elevate her legs while the condition was acute. *Id.* A second cellulitis episode occurred in October 2004, but the record specifies that the infection involved her panniculus.(an abdominal structure), rather than her legs. Tr. 253. The record does not indicate subsequent infections involving Singingtree's legs or suggest that she needed to elevate her legs after her initial infection in January 2002. The only other reference to lower extremity injury in the record suggests that Singingtree should engage in increased activity, rather than rest with elevated legs. Tr. 259.

The ALJ's finding that Singingtree does not have an ongoing condition requiring elevation of her legs is based upon the record. The ALJ's subsequent rejection of her related testimony is based upon appropriate citation to Singingtree's daily activities, as discussed above. *Smolen*, 80 F.3d at 1284.

### iii. "Bad" Days Testimony

Singingtree also contends that the ALJ failed to account for her testimony that she experiences between two and five "bad" days per month. Pl. Opening Br. 18. Singingtree does not point to specific testimony indicating that she experiences two or more "bad days" per month, or provide support for her assertion that these days occur "more toward the upper end of that range in the year prior to the hearing, as Plaintiff's weight increased even more." *Id*.

11 - FINDINGS AND RECOMMENDATION

The hearing transcript shows that Singingtree stated that she has "good days and bad days . . . If I have a good day, I can spend, you know, five or six hours working. If I have a bad day, only one or two." Tr. 325. Singingtree did not state that these days occur two or more times per month. Singingtree's submission regarding her "bad days" is unsupported by her own testimony and therefore fails.

### C. Credibility Conclusion

In summary, Singingtree has failed to show that the ALJ's credibility decision is inconsistent with the record or based upon improper legal standards. The ALJ's credibility decision is sufficiently specific and should be affirmed.

### III. Lay Witness Testimony

Singingtree contends that the ALJ failed to credit testimony offered by her roommate, Katherine Van De Water. Pl. Opening Br. 15.

### A. Analysis: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3), 416.913(d), 416.945(a)(3), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). This duty obligates the ALJ to "consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2007). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 918-19. The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Id.* at 919. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d

12 - FINDINGS AND RECOMMENDATION

at 511.  If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness.  *Id.*

### B. Discussion

Van De Water stated that Singingtree loses focus "and has trouble planning for the future without getting anxious or distracted, or sidetracked by wishful thinking."  Tr. 73.  Van De Water noted that Singingtree "rarely" leaves her home, requires "support" when grocery shopping, and cannot walk an unspecified distance to a bus stop.  *Id.*  Van De Water also stated that Singingtree "gets anxious at new places," is often reluctant to leave her room, and "has no energy, cannot stand long, walk far, or sit on hard chairs."  Tr. 73-74.

Regarding Singingtree's mental condition, Van DeWater wrote that Singingtree "does not borrow a car because she gets confused by new sets of controls" and cannot drive in unfamiliar places.  Tr. 75.  Van De Water also noted that Singingtree "gets distracted" and burns food while cooking, and cannot concentrate well enough to read.  Tr. 78, 80.  She furthermore said that Singingtree "has trouble budgeting realistically, misplaces bills and forgets them, [and is] messy and disorganized in general."  Tr. 81.  Van De Water finally stated that Singingtree "can't focus long enough to plan."  Tr. 82.

The ALJ discussed Van De Water's testimony as follows:

> Van De Water reported that the claimant visits friends and family, and does some shopping.  She has fatigue and reduced energy, and has trouble walking.  The claimant also had some memory loss (Exhibit 4E).  There is no evidence of significant memory deficit in the file, but the balance of Ms. Van De Water's testimony is given

>a fair amount of weight to the extent that it is consistent with the medical record discussed above.

Tr. 17.

The ALJ correctly noted that the record shows no evidence of significant memory impairment. Tr. 281. Because the ALJ may reject lay witness testimony inconsistent with the medical evidence, the ALJ appropriately rejected Van De Water's assertion that Singingtree has a memory impairment. *Lewis*, 236 F.3d at 512. The ALJ otherwise noted Van De Water's observations and did not explicitly reject her statements.

Singingtree argues that Van De Water's statements are consistent with her own testimony and that, because the vocational expert indicated that Singingtree would be disabled were her own testimony credited, crediting Van De Water's testimony establishes disability. Pl. Opening Br. 16. Singingtree does not establish reversible error in the ALJ's credibility analysis. While the ALJ gave Van De Water's testimony "a fair amount of weight", it did not establish disability as a matter of law.

## IV.    Vocational Expert's Testimony

Singingtree asserts that she is unable to work during her "bad days," and that resultant inability to work at least two days per month would preclude all work activity. Pl. Opening Br. 18.

As noted, Singingtree did not state how frequently these "bad days" arise and she did not state that they arise "2 to 5 times per month," as she presently submits. Tr. 325, Pl. Opening Br. 18. Furthermore, the vocational expert did not testify that three or more absences per month would preclude competitive employment. The vocational expert only testified that, "Ms.

14 - FINDINGS AND RECOMMENDATION

Singingtree's description of her days and lying down and so on . . . would preclude any work." Tr. 340. Because Singingtree did not indicate how frequently she experiences "bad days," and because the vocational expert did not testify that missing three days per month would preclude employment, Singingtree's contention that the vocational expert would have found her unable to perform past work is not based upon the record and is without merit. Furthermore, the ALJ's assessment of Singletree's credibility, discussed above, was proper and a failure to fully adopt Singletree's claim to "bad days" in the RFC assessment is not a basis for reversal.

An ALJ may exclude unsupported limitations in questioning to a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). As discussed above, the record does not show supported limitations beyond Singingtree's identified RFC assessment. Here, the ALJ appropriately excluded additional limitations from his questioning to the vocational expert.

For these reasons, Singingtree's submission that the VE's testimony suggests she is precluded from performing past work is not based upon the record and therefore fails. The ALJ's reliance upon the vocational expert's testimony at steps four and five should be affirmed.

## CONCLUSION

Singingtree fails to show that the ALJ's evaluation of the evidence resulted in an erroneous RFC assessment. These findings are based upon the record. The ALJ based his subsequent step four analysis upon an appropriate RFC assessment. His finding that Singingtree can perform her past relevant work should be affirmed.

## RECOMMENDATION

The Commissioner's decision that Singingtree did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal

standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED, the case should be dismissed, and a judgment should be entered dismissing this case with prejudice.

## **SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 18, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 4th day of September, 2007.

    /s/ Paul Papak
Paul Papak
United States Magistrate Judge